WO                                                                         SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chad Duane Daniel, | No. CV 19-08040-PCT-MTL (MTM) |
| Plaintiff, | |
| v. | **ORDER** |
| Chris McCarthy, et al., | |
| Defendants. | |

Plaintiff Chad Duane Daniel, who is currently confined in the Arizona State Prison Complex-Florence in Florence, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants move for summary judgment based on failure to exhaust administrative remedies. (Doc. 24.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 32), and he failed to file a timely response. Also before the Court is Plaintiff's "Motion to Discuss Summary Judgment on Behalf of the Plaintiff in Conjunction with the Memorandum and Points that Follow (with good cause appearing)" (Doc. 59).

The Court will deny both Motions.

**I.      Background**

On screening of Plaintiff's one-count Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated failure-to-protect claims against Defendants Apache County Jail Sergeant Chris McCarthy and Nurse Destiny based on their failures to place

Plaintiff on suicide watch or intervene in his injurious suicide attempt while he was in jail custody, and the Court directed Defendants to answer these claims. (Doc. 6.)

After filing their Motion for Summary Judgment based on failure to exhaust, Defendants filed a Motion to Stay (Doc. 26), seeking to stay this action while their Motion for Summary Judgment was pending. The Court granted the Motion to Stay to the extent that it limited discovery to evidence concerning exhaustion, pending resolution of Defendants' Motion for Summary Judgment. (*See* Doc. 39.) In the same Order, the Court granted Plaintiff's Motion for Extension of Time (Doc. 38), in which Plaintiff sought an additional 45 days to respond to Defendants' Motion for Summary Judgment, and it gave Plaintiff until November 14, 2019 to respond. (Doc. 39.)

A month after the extended deadline for Plaintiff to respond to Defendants' pending Motion for Summary Judgment passed without a response, Plaintiff filed a second Motion seeking additional time to respond (Doc. 49), and the Court denied the Motion on the grounds that Plaintiff had not shown good cause or excusable neglect for failing to seek an extension of the response deadline. (Doc. 53.)

**II.     Legal Standards**

   **A.     Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). Where the nonmovant is a pro se litigant, the court must consider as evidence in opposition to summary judgment all of the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**B.  Exhaustion Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d

1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If the defendants move for summary judgment for failure to exhaust and the evidence shows that the plaintiff did, in fact, exhaust all available administrative remedies, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue. *See Albino*, 747 F.3d at 1176 (pro se prisoner did not cross-move for summary judgment on issue of exhaustion, but because he would have succeeded had he made such a motion, sua sponte grant of summary judgment was appropriate).

**III.     Facts Relevant to Exhaustion**

      **A.     Apache County Jail Administrative Remedy Process**

The Apache County Jail provides administrative remedies for detainees to attempt to resolve issues pertaining to their confinement, including issues involving the conduct of jail staff. (Doc. 25 (Def. Statement of Facts) ¶¶ 1−2.) The Jail's administrative remedy process is set forth in its Inmate Handbook, which Plaintiff received as part of the jail intake process. (*Id.* ¶ 3.) The Inmate Handbook is also available in electronic format on the Grievance Tracker Kiosk, which detainees can use to submit grievances electronically. (*Id.* ¶ 5.) Jail staff are also able to respond to detainees' grievances electronically through the Grievance Tracker. (*Id.* ¶ 4.)

The first step of the administrative remedy process is for the detainee to raise the issue verbally with a detention officer. (*Id.* ¶ 9.) If this does not resolve the issue, the detainee must submit a "Grievance First Step," using the Grievance Tracker. (*Id.*) An

officer then contacts the detainee to attempt to resolve the issue. (*Id.*) If this also fails to resolve the issue, the detainee may appeal to the Shift Supervisor/Corporal, and then to the Jail Sergeant. (*Id.*)

If the Jail Sergeant is unable to resolve the issue to the detainee's satisfaction, the Jail Sergeant will provide the detainee a Formal Grievance form, which must be completed in its entirety and turned over to the Shift Supervisor/Corporal. (*Id.* ¶ 10; Doc. 25-1 at 28.)[1] The Shift Supervisor/Corporal then forwards the Formal Grievance to the Jail Sergeant, who assigns it a number and attempts to resolve the issue. (*Id.*) If the Jail Sergeant is unable to resolve the issue, the detainee may appeal to the Jail Lieutenant and then to the Jail Commander. (*Id.*)

If the Jail Commander does not resolve the Formal Grievance, the detainee may appeal to an External Referee for review and resolution. (*Id.* ¶ 11.) The External Referee's decision is final and marks the completion of the Jail's administrative remedy process. (*Id.*)

### B. Plaintiff's Grievances

#### 1. Grievance First Step, # 186952

According to the Jail's electronic grievance records, on December 29, 2018, Plaintiff submitted a "Grievance First Step" related to the events that gave rise to his threat-to-safety claim in this action, in which he wrote, "I want to know why on 12.28.18 I was left in my cell for 35 mi[nutes.] Give me time to make a rope ? I told Mansfield. And she told me she would be back." (Doc. 25-1 at 38.)[2]

---

[1] According to the Declaration of Apache County Jail Commander Michael Cirivello, detainees may also submit Formal Grievances electronically through the Grievance Tracker. (Doc. 25-1, Ex. 1 (Cirivello Decl.) ¶ 13.) The instructions Cirivello refers to from the Inmate Handbook do not discuss this option, however. (Doc. 25-1 at 28.) Instead, they state only that the Jail Sergeant will provide the detainee the proper form, and the detainee must complete the form and turn it over to the Shift Supervisor/Corporal, who must number it with the number of the original grievance and return it to the Jail Sergeant. (*Id.*)

[2] Defendants claim that, before submitting this grievance, jail records indicate Plaintiff first spoke to Nurse Kirk and other staff members regarding his request to be placed on suicide watch. (Doc. 25 ¶ 12.) In support, they provide the declaration testimony of Jail Commander Michael Cirivello, who claims to have personal knowledge of Plaintiff's grievance files. (Doc. 25-1, Ex. 1 (Cirivello Decl.) ¶¶ 5, 15.) Apart from citing to an attachment of Plaintiff's electronic submissions, however, Cirivello does not cite to

- 5 -

On January 2, 2019, Defendant Sgt. McCarthy[3] responded, "Officer Mansfield reported your statement to medical and I. (sic) Medical responded to you over the intercom. I was in the process of determining where you could be housed at the time you attempted to hang yourself." (*Id.* at 38−39.)

On January 2, 2019, Plaintiff wrote in response, "That is not how it gos ad (sic) u know that. I was left alone for 35 mines. (sic) So u pot me in harmes (sic) way." (*Id.* at 39.)

On January 5, 2019, "JA" responded, "Do you have any more questions we can attempt to answer for you?" (*Id.*) Plaintiff responded, "Yes why did u not come check on me for 35 minutes?" (*Id.*)

On January 9, 2019, "JA" wrote, "That question has already been answered on 01/02/2019 at 17:14 per Sgt. McCarthy. If you do not have any other questions this will be closed[.] Please be sure when doing the Grievance process this starts off in Misc. Thank you." (*Id.*)

### 2. Grievances on Officer, ## 191918, 191923

On February 26, 2019, Plaintiff submitted two grievances categorized as "Grievance on Officer." (*Id.*) In the first of these, #191918, he wrote,

> I would like to make note that when I requested suicide watch and spoke to Mansfield[,] Nurse Destiny called my cell and asked me why I was [r]equesting suicide watch[.] No one came to check on me as I made a noose and hung myself. While I was in the hospital Nurse Destiny called Officer Warner's personal cell phone ane (sic) asked to speak to me[.] I made sure Warner's camera was on and she told me that [Sgt.]

---

any documentation of Plaintiff's verbal interactions with staff; nor does he profess to have personal knowledge of these interactions. Absent personal knowledge or proper documentation, Defendants fail properly to support these facts. *See Sapiano v. Millenium Entm' t, LLC*, CV 12-8122 PSG (MAN), 2013 WL 12120262, at *4 (C.D. Cal. Nov. 14, 2013) ("when a party refers to documentary evidence as the source of a factual allegation in an affidavit or declaration, the party must attach the relevant documents to the affidavit or declaration" ); *see also Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (upholding the district court' s exclusion of affidavits that failed to attached contract documents that were referred to within the affidavits).

[3] The record entry only contains the initials "CSM" for the respondent, but a later entry makes clear that this response was from Sgt. McCarthy. (Doc. 25-1 at 39.)

> McCarthy overrode her. When I was brought back to the Jail
> Nurse Destiny approached my door in holding and told me
> again tha[t] McCarthy overrode her and that she[']s just
> covering her ass that he told her that I didn't need suicide
> watch.

(*Id.*) In the second of these Grievances on Officer, #191923, Plaintiff wrote, "On 12 28 18 when I requested to go on suicide watch and then subsequently attempted to hang myself Sgt. M[c]Carthy overrode Nurse Destiny and told her to ignore me." (*Id.*) There are no responses on record to either of these grievances. (*Id.*)

### 3. Inmate Requests

On March 15, 2019, Plaintiff submitted a paper "Inmate Request" to the Nurse, requesting to know if it is necessary "to have a cop with you when talking to a[n] inmate for security purposes," to which he received the response, "yes we do unless there is a locked door between us." (Doc. 5 at 2−3.) On March 17, 2019, Plaintiff submitted another paper "Inmate Request," in which he asked, "if a[n] inmate as (sic) for suicide watch do you take them right away because they are a threat to themselves?" and he received the response, "as soon as possible." (*Id.* at 4−5.)

Plaintiff did not take any further steps in the grievance process related to his claims in this action. (Doc. 25-1, Ex. 1 ¶ 25.)

## IV. Defendants Motion for Summary Judgment

In their Motion for Summary Judgment, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his claims in this action because, after he submitted a Grievance First Step on December 29, 2019 and "two additional requests using the 'Grievance on Officer' category on February 29, 2019," he did not submit a formal grievance, which would have been the next step in the grievance process, and he took no further steps to pursue his administrative remedies. (Doc. 24 at 3.)

Defendants have not met their initial burden of showing that administrative remedies remained available to Plaintiff throughout the grievance process and Plaintiff nonetheless failed to exhaust those remedies. *Albino*, 747 F.3d atf3d 1172 (9th Cir. 2014); *Brown*, 422 F.3d at 936−37. First, as to whether Plaintiff failed to file a formal grievance,

Defendants make no distinction in their Motion or supporting declaration between a "Grievance First Step" and a "Grievance on Officer," both of which the evidence shows Plaintiff filed regarding his being left alone for 35 minutes after requesting suicide watch. (Doc. 25-1 at 38−39, 45.) There is also no explanation of these different categories in the Inmate Handbook. (*See* Doc. 25-1 at 28.)

Absent additional facts, it is impossible to tell what role a Grievance on Officer plays in the overall grievance process or what instruction Plaintiff received about when to file a Grievance on Officer from which to conclude that Plaintiff knew filing a Grievance on Officer after a Grievance First Step was not the same thing as proceeding to a Formal Grievance, as Defendants argue Plaintiff was required to do.[4]

It is also impossible to tell solely from the documentation of Plaintiff's Grievance First Step if Plaintiff's issue was properly referred up the chain of command—from an officer, to the Shift Supervisor/Corporal, to the Jail Sergeant—or whether, upon being unable to resolve the issue to Plaintiff's satisfaction, the Jail Sergeant provided Plaintiff a "Formal Grievance form," as described in the Inmate Handbook . (*See* Doc. 25-1 at 38.) And it is unclear if Plaintiff received any instruction about how to proceed at that point, or how he was to interpret the bare response, "If you do not have any other questions this will be closed[.] Please be sure when doing the Grievance process this starts off in Misc." (*Id.* at 39.) *See Brown*, 422 F.3d at 937 ("information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, 'available.'") (internal citation omitted).

Finally, and more fundamentally, the evidence shows that, after Plaintiff filed his "Grievance First Step" and that grievance was closed without apparent resolution, Plaintiff filed two "Grievances on Officer," specifically detailing the facts alleged in this action, and there is no record Plaintiff ever received a response to these filings or that prison staff took any further action to address Plaintiff's "suicide watch" issue. (*See id.* at 45.) Absent

---

[4] Defendants attach a "flow chart" of the administrative remedy process in which a Grievance First Step and a Grievance on Officer appear to be interchangeable, but this flow chart is not included in the Inmate Handbook. (*See* Doc. 25-1 at 8.)

1  additional facts showing what options were available to Plaintiff to pursue his
2  administrative remedies after prison staff closed his Grievance First Step without resolving
3  the issue and then twice failed to respond to his Grievances on Officer, Defendants have
4  not met their burden of showing that any additional administrative relief remained available
5  to Plaintiff that he failed to exhaust. "[T]here can be no "absence of exhaustion" unless
6  *some* relief remains "available," a defendant must demonstrate that pertinent relief
7  remained available, whether at unexhausted levels of the grievance process or through
8  awaiting the results of the relief already granted as a result of that process." *Brown*, 422
9  F.3d at 936–37 (emphasis in original).

Because Defendants have failed to meet their initial burden of showing that administrative remedies remained available to Plaintiff and he failed to exhaust those remedies, Plaintiff need not show anything, and the Court will deny Defendants' Motion for Summary Judgment based on failure to exhaust. *See Nissan*, 210 F.3d at 1102–03.

**V.    Plaintiff's Motion to Discuss**

Plaintiff's Motion to Discuss appears to be either an attempt to move for summary judgement on the merits or a belated attempt to respond to Defendants' Motion for Summary Judgment based on failure to exhaust. To the extent Plaintiff appears to seek summary judgment, he failed to comply with the Federal and Local Rules of Civil Procedure for doing so, and the Motion will be summarily denied. *See* Fed. Rule Civ. P. 56; LRCiv. 56.1 (requiring, among other things, that the movant file a separate statement of facts). Moreover, because this action is currently stayed pending resolution of the exhaustion issue, a motion on the merits is premature.

To the extent Plaintiff attempts to respond to Defendants' Motion for Summary Judgment, his filing is untimely. Additionally, since Defendants have not met their initial burden of showing a failure to exhaust, a response is unnecessary and need not be considered.

. . . .

. . . .

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 24) and Plaintiff's Motion to Discuss (Doc. 59), and the Motions are **denied**.

(2) The Court's stay of discovery pending resolution of the exhaustion issue (Doc. 39) is **lifted**. A Scheduling Order will be issued by the Magistrate Judge as a separate order.

(3) All other matters must remain with the Magistrate Judge for disposition as appropriate.

Dated this 3rd day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge